## KING v. ILLINOIS STEEL CORPORATION.

[No. 14,275.   Filed May 15, 1931.]

*Milo C. Murray, Joseph T. Markey* and *R. L. Bailey,* for appellant.

*White, Wright & Boleman, Knapp, Beye, Allen, Cochran & Cushing* and *Joseph L. Earlywine,* for appellee.

WOOD, J.—This is a proceeding brought by the appellant, Josephine King, against the Illinois Steel Corporation, appellee, before the Industrial Board of Indiana, for an award of compensation pursuant to the Workmen's Compensation Act, based upon a claim of dependency on one Nathan Mabery, her brother, who received injuries while in the employ of appellee, which resulted in his death. The claim was filed upon a form adopted and furnished by the Industrial Board of this state. It was submitted to a single member of the board for hearing, who refused to award compensation. An application for review by the full board was made, and, upon hearing, the award for compensation was again refused. It is from this action of the Industrial Board that this appeal is taken.

The only question submitted for consideration by this court is whether or not the appellant was a dependent of Nathan Mabery, as contemplated by the Workmen's Compensation Act, thus entitling her to compensation because of his death from injuries received as above stated.

There was no evidence introduced at the hearings before the Industrial Board except that on behalf of appellant. It is wholly undisputed, and from it the following facts are developed: Nathan Mabery was a brother of appellant; in October, 1928, he came from

Chicago to Gary, where he had employment of various kinds, until May 16, 1930, when he received the injuries from which he died May 21, 1930; during this entire time, he occupied a room and ate his meals at the home of appellant; she made no charge for the service; appellant owned her own home, was married and living with her husband during the time in question, but he had been an invalid, unable to work for a period of four years previous to the death of Nathan Mabery, had been confined to his bed some of the time; both appellant and her husband were without means; previous to Mabery coming to her home, appellant had kept some roomers and boarders, but, since he had been staying there, she had not had any boarders, had a man and his wife as roomers for three weeks, who paid $5 per week, another man as roomer for three weeks, who paid $3 per week, and another man as roomer, who had been there since sometime in 1929, who paid $4 per week; when Mabery came to Gary in October, 1928, he had a wife living and contributed to her support until her death in February, 1929; during the entire time he lived in the home of appellant, he gave her money with which to keep up and maintain the home, the amount and the times when the money would be given to appellant varied depending upon the amount of wages received by Mabery, and the frequency of their payment to him; if he (Mabery) was paid each week, he would usually give appellant money each week; the amount varied from $8 up, on one occasion he gave her $20, and on another $30, and, previous to his death, he gave her his pay check from appellee in the sum of $28.30; this money was used to supply food and groceries for the home, and for such other purposes as the appellant saw fit in the home; he also paid the light, gas and coal bills, and taxes on appellant's property; when appellant was sick, he called the doctor, paid him for his services rendered to both appellant and her

husband, also employed and paid for help in the home when appellant was ill; Mabery paid the bills and gave his sister money for household expenses because her husband was ill and unable to support her; except for the small amount that she received from roomers as aforesaid, appellant had no means of support other than that furnished by her brother; Mabery had neither wife nor children at the time of his death.

It was further stipulated between the parties that Nathan Mabery died on May 21, 1930, as the proximate result of personal injuries received May 16, 1930, by reason of an accident arising out of and in the course of his employment by appellee, that his average weekly wage was $26.40; that a good faith effort had been made to adjust the differences, which resulted in a disagreement.

Section 38, of the Workmen's Compensation Act, Acts 1929 p. 537 (§9483 Burns Supp. 1929), after enumerating explicitly the persons who shall be conclusively presumed to be wholly dependent for support upon a deceased employee in the application of the act, then provides that: "In all other cases, questions of total dependency shall be determined in accordance with the fact, as the fact may be at the time of the death, and question of partial dependency shall be determined in like manner as of date of the injury."

Unless she brings herself within the purview of the statute above quoted, by proof of sufficient facts, appellant is not entitled to compensation under the act. That is to say, whether appellant was a dependent of Nathan Mabery, within the meaning of the term as used in this act, is a mixed question of fact and law. *Columbia School Supply Co.* v. *Lewis* (1916), 63 Ind. App. 386, 115 N. E. 103; *In re Carroll* (1917), 65 Ind. App. 146, 116 N. E. 844.

Where the evidence is conflicting, or where it is such that different deductions may reasonably be drawn therefrom, leading to different conclusions as to ▮▮ the relation existing between the parties, and the Industrial Board has made a finding based on that evidence, then such finding is conclusive, if there is evidence in the record sustaining same, and it must be accepted by this court. *Swing* v. *Kokomo Steel, etc., Co.* (1919), 75 Ind. App. 124, 125 N. E. 471; *General, etc., Car Corp.* v. *McGlaughlin* (1928), 87 Ind. App. 276, 162 N. E. 30; *Columbia School Supply Co.* v. *Lewis, supra*. But where, as in the instant case, the facts are all uncontroverted, in order that it may be determined what the relation was between appellant and Mabery, there must be applied to the facts, including the inferences and conclusions to be reasonably drawn therefrom, certain legal standards and principles, so a question of law is involved. It follows, therefore, that the ultimate question, where the facts are all uncontradicted, as here, whether appellant is a dependent, is a law question. *Buhner* v. *Bowman* (1924), 81 Ind. App. 395, 143 N. E. 366; *Carter* v. *Templeton Coal Co.* (1927), 86 Ind. App. 175, 156 N. E. 518; *Columbia School Supply Co.* v. *Lewis, supra; In re Carroll, supra*.

The Workmen's Compensation Act does not define, but rather describes, dependent persons. In *In re Carroll, supra*, this court said: "Stated generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent; one who relies on another for the reasonable necessities of life. . . .

"To confine the inquiry to the question whether the family of the deceased workman could have supported life without any contributions from him, or whether such contributions were absolutely necessary in order that the family might be reasonably maintained, is not a fair test of dependency; but rather the inquiry should

include the question whether contributions from the workman were looked to, depended and relied on, in whole or in part, by the family for means of reasonable support. . . .

"Among the elements that are *indicia* of a state of dependency are: an obligation to support; the fact that contributions have been made to that end; that the claimant in any case is shown to have relied on such contributions and their continuing; and the existence of some reasonable grounds as a basis for probability of their continuance or of a renewal thereof if interrupted. We would not be understood as indicating that all these elements must exist in each case in order that there may be a state of dependency. As a rule, to which there are exceptions, however, the fact that contributions have been made is an essential element of a state of dependency within the meaning of the act."

For more than a year previous to his death Mabery had been living in the home of his sister, appellant herein; no charge or demand was made by her against or of him for his room and board. Her husband had been in ill health and unable to earn any wages or in any way contribute to the support and maintenance of the household for four years; she and her husband were both without funds. Except for the small amounts which appellant had received from roomers, she had no money or income, but only such as she received from her brother. He had during this entire time been turning over to appellant a substantial portion of his earnings, as and when he received them from his employers. No record or account was kept by either party of the time when or amount of the various sums received by appellant. There was never any accounting made or demanded, as would be expected or anticipated if the money was paid by the deceased and received by appellant as compensation for room and board. Furthermore, in addi-

tion to the money which appellant received from Mabery, he paid light, gas and coal bills, taxes on the house, purchased groceries, engaged and paid for the services of a physician for both appellant and her husband, engaged and paid for the services of a domestic in the home during appellant's illness, all of which acts would be entirely out of harmony with the conclusion that the earnings turned over to appellant were regarded or treated by either party as compensation for room and board. *Smith* v. *Leslie* (1926), 85 Ind. App. 186, 151 N. E. 17.

We, therefore, hold as a matter of law that the facts in this case establish a state of partial dependency at least, and that a new hearing should be granted in this proceeding, and such an award made as will not be inconsistent with this opinion.

Judgment reversed.